1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ROBERT HEFFINGTON,                      No.  2:17-cv-00317-DAD-JLT

12              Plaintiff,

13        v.                                 ORDER GRANTING PLAINTIFF'S MOTION
                                             FOR ATTORNEYS' FEES AND MOTION
14   FCA US LLC,                             FOR COSTS AND EXPENSES, IN PART

15              Defendant.                   (Doc. Nos. 99, 100)

16

17          This matter is before the court on the motion for attorneys' fees and motion for costs and

18   expenses filed by plaintiff Robert Heffington on May 19, 2020.  (Doc. Nos. 99, 100.)  Pursuant to

19   General Order No. 617 addressing the public health emergency posed by the coronavirus

20   pandemic, on May 21, 2020, the court took this matter under submission to be decided on the

21   papers.  (Doc. No. 104.)  For the reasons explained below, the court will grant plaintiff's motions,

22   in part.

23                                   **BACKGROUND**

24          On January 10, 2017, plaintiff commenced this action against defendant FCA US LLC

25   ("FCA") by filing suit in the Sacramento County Superior Court.  (Doc. No. 1-1 at 2.)  In his

26   complaint, plaintiff alleged that a new 2011 Jeep Wrangler that he purchased on March 24, 2011

27   was delivered to him with serious defects and nonconformities to warranty.  (Doc. No. 1-1 at 3,

28   24.)  Plaintiff asserted claims for breaches of express and implied warranties in violation of the

                                             1

Song-Beverly Act, California Civil Code § 1790 *et seq*., and a claim for fraudulent inducement by concealment.  (*Id*. at 24–26.)  On February 14, 2017, defendant removed this action to this federal court.  (Doc. No. 1.)  Thereafter, the court set a trial date of February 12, 2019.  (Doc. No. 14.)  Following several continuances due to the court's unavailability, the trial date was ultimately continued to February 19, 2020.  (Doc. No. 82.)

On February 4, 2020, the parties notified the court that they had reached a settlement of this action.  (Doc. No. 89.)  Following plaintiff's rejection of FCA's two prior offers of judgment under Federal Rule of Civil Procedure 68, FCA had served plaintiff with a third Rule 68 offer in the amount of $85,000.00, which plaintiff accepted.  (Doc. No. 99-1 at 6, 12).  The accepted offer provided that in addition to $85,000.00, FCA would pay "a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time reasonably incurred in connection with the commencement and prosecution of this action pursuant to Civil Code Section 1794(d), to be determined by the court if the parties cannot agree."  (Doc. No. 99-2 at 34.)

On May 19, 2020, the parties filed a stipulation that FCA shall pay $5,000.00 to plaintiff's trial counsel Hackler, Daghigian, Martino, & Novak, P.C. ("HDMN")[1] "in full satisfaction of HDMN's claims for attorneys' fees in connection with this action."  (Doc. No. 97 at 2.)  Accordingly, the court will give effect to the parties' stipulation and award $5,000 in attorneys' fees to HDMN.

Apparently unable to agree on the appropriate amount of attorneys' fees, costs, and expenses to be paid to his lead counsel Knight Law Group ("Knight Law"), on May 19, 2020, plaintiff filed the pending motion for attorneys' fees and motion for costs and expenses.  (Doc. Nos. 99, 100.)  On June 2, 2020, FCA filed its oppositions to the pending motions.  (Doc. Nos. 106, 107).  On June 9, 2020, plaintiff filed his replies thereto.  (Doc. Nos. 108, 109.)

## LEGAL STANDARD

Under California's Song-Beverly Act, "if [a] buyer prevails in an action . . ., the buyer shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate

---

[1]  On October 24, 2018, the HDMN law firm associated into this matter as trial counsel in anticipation of the matter proceeding to trial.  (Doc. Nos. 40; 99-1 at 7 n.1).

1  amount of costs and expenses, including attorney's fees based on actual time expended,

2  determined by the court to have been reasonably incurred by the buyer in connection with the

3  commencement and prosecution of such action."  Cal. Civ. Code. § 1794(d).  "The plain wording

4  of the statute requires the trial court to base the fee award upon actual time expended on the case,

5  as long as such fees are *reasonably* incurred—both from the standpoint of time spent and the

6  amount charged."  *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785,

7  817 (2006).

> It requires the trial court to make an initial determination of the
> actual time expended; and then to ascertain whether under all the
> circumstances of the case the amount of actual time expended and
> the monetary charge being made for the time expended are
> reasonable.  These circumstances may include, but are not limited
> to, factors such as the complexity of the case and procedural
> demands, the skill exhibited and the results achieved.  If the time
> expended or the monetary charge being made for the time expended
> are not reasonable under all the circumstances, then the court must
> take this into account and award attorney fees in a lesser amount.  A
> prevailing buyer has the burden of showing that the fees incurred
> were allowable, were reasonably necessary to the conduct of the
> litigation, and were reasonable in amount.

15  *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994) (citation and internal

16  quotation marks omitted); *see also Goglin v. BMW of N. Am., LLC*, 4 Cal. App. 5th 462, 470

17  (2016).  Under a contingent fee arrangement, "a prevailing buyer represented by counsel is

18  entitled to an award of reasonable attorney fees for time reasonably expended by his or her

19  attorney."  *Nightingale,* 31 Cal. App. 4th at 105 n.6.

20  "The determination of what constitutes a reasonable fee generally begins with the

21  'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly

22  rate."  *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 154 (2006) (quoting *PLCM*

23  *Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000)).  The court will apply the lodestar method

24  to the Song-Beverly Act because "the statutory language of section 1794, subdivision (d), is

25  reasonably compatible with a lodestar adjustment method of calculating attorney fees, including

26  use of fee multipliers."  *Robertson*, 144 Cal. App. 4th at 818; *see also Warren v. Kia Motors Am.,*

27  *Inc.*, 30 Cal. App. 5th 24, 35 (2018).  Moreover, because "[the California] Supreme Court has

28  held that the lodestar adjustment method is the prevailing rule for statutory attorney fee awards to

be applied in the absence of clear legislative intent to the contrary, [the lodestar adjustment method] . . . is applicable to attorney fee awards under section 1794, subdivision (d)." *Robertson*, 144 Cal. App. 4th at 818–19 (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1135–36 (2001)).  As the California Supreme Court has explained:

> [T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award.  The purpose of such adjustment is to fix a fee at the fair market value for the particular action.  In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services.

*Ketchum*, 24 Cal. 4th at 1132 (internal citation omitted).  In addition, "[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation than would otherwise be reasonable." *Id.*  "Decisions by other courts regarding the reasonableness of the rate sought may also provide evidence to support a finding of reasonableness." *Hellenberg v. Ford Motor Co.*, No. 18-cv-2202-JM-KSC, 2020 WL 1820126, at *1 (S.D. Cal. Apr. 10, 2020).

In opposing a request for attorneys' fees, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Etcheson v. FCA US LLC*, 30 Cal. App. 5th 831, 848 (2018) (quoting *Premier Med. Mgmt. Sys. v. Cal. Ins. Guar. Assoc.*, 163 Cal. App. 4th 550, 564 (2008)).  Instead, the opposing party must demonstrate that the hours claimed are duplicative or excessive.  *Premier Med. Mgmt. Sys.*, 163 Cal. App. 4th at 562, 564; *Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("The party opposing the fee award can be expected to identify the particular charges it considers objectionable.").  "To challenge attorneys' fees as excessive, the challenging party must 'point to the specific items challenged, with a sufficient argument and citations to the evidence.'" *Nai Hung Li v. FCA US LLC*, No. 2:17-cv-06290-R-JEM, 2019 WL 6317769, at *1 (C.D. Cal. July 1, 2019) (quoting *Premier Med. Mgmt. Sys.*, 163 Cal. App. 4th at 564).

/////

1    With this guidance in mind, the court turns to consider plaintiff's pending motions.[2]

2                                    **ANALYSIS**

3    As the buyer who prevailed in this lawsuit, plaintiff is entitled to an award of reasonably

4    incurred attorneys' fees, costs, and expenses.  *See* Cal. Civ. Code § 1794(d).  Here, plaintiff

5    seeks:  (1) an award of attorneys' fees in the amount of $30,867.50; (2) a lodestar multiplier of

6    0.5, in the amount of $15,433.75; and (3) an award of actual costs and expenses incurred in the

7    amount of $12,317.91.  (Doc. Nos. 99 at 2; 100 at 2.)  Plaintiff seeks a total award of $58,619.16.

8    (*Id.*)  FCA contends that the lodestar requested by plaintiff is unreasonable and that a positive

9    multiplier is not warranted in this case.  (Doc. No. 107 at 7.)  FCA also objects to various costs

10   and expenses for which plaintiff seeks reimbursement.  (Doc. No. 106.)

11   **A.      Attorneys' Fees Request**

12   To assess the reasonableness of plaintiff's requested amount for attorneys' fees, the court

13   will first consider the reasonableness of the number of hours expended by Knight Law, then

14   address the reasonableness of Knight Law's hourly rates, and finally consider whether a lodestar

15   multiplier is warranted here.

16           1.      Reasonableness of Number of Hours Expended

17   Knight Law's billing records indicate that ten attorneys expended (or anticipated

18   expending) a total of 90.6 billable hours on this action, billing a total of $30,867.50 for its efforts

19   in prosecuting this case.  (Doc. Nos. 99-1 at 14; 99-2 at 21–27; 108 at 11; 108-1 at 4.)[3]  FCA

20   contends that the number of hours billed by plaintiff's attorneys is unreasonable for several

21   reasons.  The court will address each of FCA's arguments in turn.

22   First, FCA argues that it served plaintiff with two Rule 68 offers, and that instead of

23   accepting either of those offers or responding with a meaningful counteroffer, plaintiff continued

24   _____

25   [2]  Each party objects to evidence presented by the other in support of or in opposition to the
     pending motions.  The court has considered these boilerplate evidentiary objections and, to the
26   extent that the court considers any such objected-to evidence, those objections are overruled.

27   [3]  The billing records reflect a total of 91 hours and $30,977.50 billed, but plaintiff withdrew his
     fee request with respect to an erroneous time entry on November 27, 2017 for 0.4 hours, totaling
28   $110.  (Doc. Nos. 108 at 11; 108-1 at 4.)

                                                5

1    to litigate and "delayed resolution so that the maximum amount of legal fees could be incurred."

2    (Doc. No. 107 at 5–6.)  In particular, FCA points to plaintiff's unwillingness to accept its second

3    Rule 68 offer only to accept its third Rule 68 offer a year later—on exactly the same terms to

4    resolve the case for $85,000.00.  (*Id.*)  FCA argues that plaintiff's requested fee amount should be

5    substantially reduced because "[n]othing prevented plaintiff from accepting the previous $85,000

6    offer or making a demand for this amount at an earlier stage of the litigation."  (*Id.* at 6.)  In his

7    reply, plaintiff does not squarely address FCA's argument in this this regard, though he explains

8    in his motion that during the year between his rejection of FCA's second offer and his acceptance

9    of FCA's third offer, plaintiff had served FCA with three settlement offers of his own, all of

10   which FCA rejected.  (Doc. No. 99-1 at 12.)  The court is not persuaded by FCA's argument that

11   plaintiff delayed during that year by not responding with meaningful counteroffers.  In fact,

12   plaintiff's last offer was only $7,000 more than the amount FCA offered to plaintiff.  (*Id.*)  In the

13   court's view, the slim difference between those offers shows that plaintiff's counteroffers were

14   meaningful, not dilatory.  Moreover, FCA does not direct the court to any authority, and the court

15   is aware of none, to support its argument that where a plaintiff rejects an offer and then later

16   accepts an offer on the same terms, the court should reduce the number of hours for which

17   plaintiff's counsel is compensated in a subsequent statutory fee award.

18        Second, FCA contends that plaintiff's use of ten attorneys resulted in duplication of

19   efforts because by having a different attorney perform each task, "the handling attorney must

20   inevitably get up to speed with the file, including the facts of the case, resulting in duplication and

21   inefficiency."  (Doc. No. 107 at 11.)  Here again, FCA fails to provide any authority in support of

22   its position that solely because multiple attorneys work on a case, this court should reduce the

23   number of attorney hours when considering an application for an award of attorneys' fees.  To the

24   contrary, it has been "recognized that 'the participation of more than one attorney does not

25   necessarily constitute an unnecessary duplication of effort.'"  *McGrath v. County of Nevada*, 67

26   F.3d 248, 255 (9th Cir. 1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir.

27   1989)).  Moreover, FCA has not identified in its opposition to the pending motion any entries that

28   reflect a duplication of effort.  For example, FCA notes that three attorneys billed for time spent

1    on plaintiff's motion to remand, but FCA neither addresses the descriptions of work performed

2    nor explains how any of that work was duplicative.  (Doc. No 107 at 11.)  In fact, the court has

3    reviewed those entries and concludes that there was no duplication of effort; the tasks described

4    were distinct:  drafting the motion to remand is a distinct task from reviewing a court's notice

5    regarding the hearing date[4], which is also distinct from preparing for and attending the hearing on

6    the motion.  (*See* Doc. No. 99-2 at 21–22.)  FCA's unsupported argument that these tasks were

7    duplicated by the attorneys who performed them is even more of a stretch given that the same

8    attorney who drafted the motion to remand also prepared for and attended the hearing, so that

9    attorney did not have to spend time getting up to speed on the motion.

10          Third, FCA contends that some entries show that Knight Law billed excessively.  (Doc.

11   No. 107 at 12–14.)  FCA contests the reasonableness of one attorney spending one hour to

12   "prepare joint mid-discovery status conference report" because "just six simple bullet points"

13   were contributed to the joint report from plaintiff's counsel.  (*Id*. at 12.)  In his reply, plaintiff

14   argues that one hour was a reasonable amount of time for the attorney to not only draft plaintiff's

15   contribution to the joint report, but also "thoroughly review the discovery in this matter (whether

16   additional written requests would be needed, additional depositions after reviewing transcripts,

17   etc.)."  (Doc. No. 108 at 11.)  FCA also contests the reasonableness of Knight Law attorney Steve

18   Mikhov spending 0.7 hours to "review and audit billing" and 4.7 hours preparing the pending

19   motion for attorneys' fees and declaration in support thereof.  (Doc. No. 107 at 12, 14.)  But FCA

20   fails to show how these amounts are excessive, and the court is not persuaded that a reduction in

21   the number of hours for the tasks is warranted in the cited instances.

22          Fourth, FCA argues that the court should disallow all hours expended by plaintiff's

23   counsel in relation to defending the deposition of Dr. Barbara Luna, who plaintiff hired to support

24   his fraud claim.  (Doc. No. 107 at 13.)  According to FCA, disallowing these hours is warranted

25   for two independent reasons:  (1) recovery of fees is not authorized for fraud claims; and (2)

26   plaintiff did not actually achieve any recovery on her fraud claim.  (*Id*.)  In reply, plaintiff does

---

[4]  Though attorney billing for such a perfunctory task could be subject to challenge on other grounds.

1   not explicitly contest FCA's assertion that fees are not permitted on fraud claims.  But plaintiff

2   asserts that where there is "an issue common to both a cause of action for which fees are

3   permitted and one for which they are not," attorneys' fees do not need to be apportioned, and "all

4   expenses incurred on common issues qualify for an award."  (Doc. No. 108 at 11–12).  Both

5   parties cite to the decision by the California Court of Appeal in *Akins v. Enterprise Rent-A-Car*

6   *Co. of San Francisco*, 79 Cal. App. 4th 1127 (2000) to support their arguments.  (*See* Doc. Nos.

7   107 at 13; 108 at 11.)  FCA, however, ignores the state appellate court's explanation in *Akins* that

8   "the joinder of causes of action should not dilute the right to attorney fees," and that "[s]uch fees

9   need not be apportioned when incurred for representation of an issue common to both a cause of

10  action for which fees are permitted and one for which they are not."  *Akins*, 79 Cal. App. 4th at

11  1133.  Plaintiff maintains that all work on the common law fraud claim was relevant to plaintiff's

12  Song-Beverly Act claims and explains that, "[w]hile Dr. Luna's expected testimony would

13  address fraud matters, a significant portion of her testimony would relate to the reasonableness of

14  FCA's corporate conduct" and "provide support that FCA had knowledge of existing defects—a

15  topic relevant to the Song-Beverly Act's civil penalties award."  (Doc. No. 108 at 12.)  The court

16  finds that apportionment of fees is not warranted here.  *See Blasco Real Estate, Inc. v. FCA US*

17  *LLC*, No. CIVDS1609641, 2019 WL 5965149, at *1 (Cal. Super. Ct. June 05, 2019) (declining to

18  apportion attorneys' fees where "the claims of fraud and warranty and civil penalties

19  overlapped").  Accordingly, the court will not disallow the hours expended by counsel related to

20  the deposition of Dr. Luna.

21           Fifth, FCA argues that the court should reduce the number of hours allowed for attorney

22  Hernandez because her block-billed entries do not specify how much time was spent on traveling

23  for plaintiff's deposition and vehicle inspection.  (Doc. No. 107 at 12.)  FCA speculates that of

24  the 6.8 hours billed for time related to plaintiff's deposition, which lasted fifty minutes, five hours

25  were spent travelling.  (Id.)  Similarly, FCA speculates that of the 8.5 hours billed for time related

26  to plaintiff's vehicle inspection, five hours were spent travelling.  (*Id.* at 13.)  The court is not

27  persuaded by FCA's arguments in this regard, particularly because the time entries that FCA

28  refers to describe the work performed as:  "prepare for and attend plaintiff's deposition (travel

1    included); draft memorandum"; and "prepare for and attend VI [vehicle inspection] (travel

2    included); draft summary."  (Doc. No. 99-2 at 24.)  Thus, although the deposition transcript may

3    indicate that plaintiff's deposition was relatively short, 6.8 hours is not an unreasonable amount

4    of total time when considering attorney Hernandez also spent some of that time to prepare for the

5    deposition and to draft a memorandum afterwards, not just traveling.  Moreover, although FCA

6    asserts that courts have frequently reduced travel time by half to create a reasonable rate, FCA

7    cites only to a Ninth Circuit decision upholding a district court's reduction of travel time based on

8    the fact that all of the plaintiffs' attorneys in that case travelled extensively throughout that

9    litigation and billed their entire travel time.  (Doc. No. 107 at 12–13) (citing *In re Washington*

10   *Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1298 (9th Cir. 1994)).  FCA has not persuaded

11   this court that such a reduction for travel time is warranted under the circumstances in this case.

12        Finally, plaintiff's request for fees includes entries for anticipated time related to

13   reviewing FCA's oppositions to the pending motions and preparing plaintiff's replies thereto, as

14   well as time for preparation and attendance at a hearing on the pending motions.  (*See* Doc. No.

15   99-2 at 26.)  Because the court took the pending motions under submission shortly after plaintiff

16   filed them and notified the parties that no hearing on the motions would be held—and indeed no

17   hearing was held—the court will not award the one hour of time that attorney Devabose

18   anticipated expending related to a hearing.  As to the other entries, in his reply, plaintiff updated

19   and replaced some of the anticipated time entries with the actual hours billed:  Knight Law

20   anticipated expending six hours reviewing FCA's opposition to plaintiff's motion for attorneys'

21   fees and drafting his reply thereto, but the attorney actually expended 5.7 hours on those tasks.

22   (Doc. Nos. 108 at 10; 108-1 at 4.)  Plaintiff adjusted his requested fee amount accordingly.  (*Id.*)

23   The court finds no reason to reduce those 5.7 hours any further.  But for some unexplained

24   reason, Knight Law did not provide an updated billing entry related to the anticipated expenditure

25   of 1.5 hours to review FCA's opposition to plaintiff's motion for costs and to draft plaintiff's

26   reply thereto.  No evidence of the time actually spent on those tasks has been presented to the

27   court.  Nevertheless, the court finds that 1.5 hours for the performance of those tasks is reasonable

28   given the relatively short but detailed opposition by FCA and the reply thereto submitted by

plaintiff's counsel.  Thus, the court will only reduce attorney Devabose's requested time by one hour to account for the hearing on the motions that was not held.

The court has reviewed the Knight Law billing records at issue here and concludes that, for the most part, the time billed was reasonably incurred in the commencement and prosecution of this action.  Thus, the court will include in the lodestar calculation of an attorneys' fee award the following hours:

| Attorney | Hours Requested | Hours Awarded |
|---|---|---|
| Attorney Alastair Hamblin | 10.2 | 10.2 |
| Attorney Amy Morse | 5.4 | 5.4 |
| Attorney Deepak Devabose | 21.0 | 20.0 |
| Attorney Diane Hernandez | 15.3 | 15.3 |
| Attorney Joel Elkins | 7.5 | 7.5 |
| Attorney Kristina Stephenson-Cheang | 9.8 | 9.8 |
| Attorney Mitchell Rosensweig | 4.4 | 4.4 |
| Attorney Michael Morris-Nussbaum | 3.7 | 3.7 |
| Attorney Natalee Fisher | 6.0 | 6.0 |
| Attorney Steve Mikhov | 7.0 | 7.0 |
| Total Hours | 90.3 | 89.3 |

2. Reasonableness of the Hourly Rates to be Applied

Next, the court must determine whether the hourly rates requested by plaintiff's attorneys are reasonable.  Under California law, when awarding attorneys' fees under Civil Code § 1794(d), the relevant inquiry is whether "the monetary charge being made for the time expended [is] reasonable" under all the circumstances including "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved."  *Goglin v. BMW of N. Am., LLC,* 4 Cal. App. 5th 462, 470 (2016) (quoting *Nightingale,* 31 Cal. App. 4th at 104).  California courts therefore focus on the reasonable hourly rate for the work performed by the counsel who did that work, regardless of the forum in which that work was performed and without regard to

/////

/////

/////

/////

1    typical hourly rates in the forum in which the matter was litigated.[5]  *See Goglin*, 4 Cal. App. 5th

2    at  470 (affirming a fee award applying a hourly rate of $575 per hour in a Song-Berverly Act case

3    on the grounds that the trial court had considered the evidence that the client agreed to

4    compensate counsel at the rate of $575 an hour (later increased to $625), other state and federal

5    courts had awarded the attorney comparable rates in similar cases, and the trial court had

6    observed the attorney's skills first hand, while not even mentioning the prevailing rates in the trial

7    court's area); *see also Filiberto Negrete v. Ford Motor Co. et.al.*, No. 18-cv-1972-DOC-KKx,

8    2019 WL 4221397, at *3 (C.D. Cal. June 5, 2019) ("Plaintiff has demonstrated that counsel has

9    been awarded attorneys' fees at similar rates under the Song-Beverly Act.  Such evidence is

10   _____

11   [5]  In awarding attorneys' fees under the Song-Beverly Act, other district courts have required
     "[t]he fee applicant . . . [to] produc[e] satisfactory evidence that the requested rates are in line

12   with those prevailing in the community for similar services of lawyers of reasonably comparable
     skill and reputation."  *Base v. FCA US LLC*, No. 17-cv-01532-JCS, 2019 WL 4674368, at *4

13   (N.D. Cal. Sept. 25, 2019) (citing *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir.
     1987)); *see also Self v. FCA US LLC*, No. 1:17-cv-01107-SKO, 2019 WL 1994459, at *4–5 (E.D.

14   Cal. May 6, 2019); *Hall v. FCA US LLC*, No. 1:16-cv-0684-JLT, 2018 WL 2298431, at *5–6
     (E.D. Cal. May 21, 2018).  Citing to Ninth Circuit and Supreme Court precedent, these courts

15   have stated that the "relevant community" in determining a prevailing market rate is the forum in
     which the district court sits and have then analyzed whether the rates requested by counsel are

16   reasonable in light of rates paid to attorneys of similar skill and experience in the forum district.
     *See, e.g.*, *Self*, 2019 WL 1994459, at *4–6.  This, however, is the framework that federal courts

17   apply to motions seeking attorneys' fees pursuant to a federal statute.  The undersigned is aware
     of no authority holding that a federal court must apply that same framework when awarding

18   attorneys' fees pursuant to a state statute.  Indeed, the California Court of Appeal in *Goglin* did
     not engage in that forum-based rate analysis and, as evidenced by the many state court fee orders

19   that the parties have pointed this court to, state courts generally do not engage in that analysis.
     The undersigned, therefore, considers the pending motion under the standard articulated by the

20   California Court of Appeal in *Goglin* and will determine "whether the monetary charge being
     made for the time expended [is] reasonable" in light of "the complexity of the case and

21   procedural demands, the skill exhibited and the results achieved."  4 Cal. App. 5th at 470 (internal
     quotation marks and citation omitted).  This approach will appropriately result in plaintiff's

22   counsel being compensated at the same hourly rates they would have received in state court rather
     than a lower rate based solely on the removal of the action to federal court.  However, even if the

23   rate determination framework utilized in motions seeking attorneys' fees pursuant to federal
     statutes were to apply in this case, the court notes that the hourly rates found to be reasonable by

24   this order would be the same under that framework too.  For, under the "relevant community"
     analysis, this court would look to the orders of state courts within the Eastern District of

25   California and conclude that those rates are consistent with those prevailing in the community for
     similar services.  *See Tenorio v. Gallardo*, No. 1:16-cv-00283-DAD-JLT, 2019 WL 3842892, at

26   *2 n.1 (E.D. Cal. Aug. 15, 2019).

27

28

11

generally sufficient to show that an attorney's hourly rates are reasonable.") (internal citation omitted).  The fee applicant bears the burden of producing satisfactory evidence that the fees incurred were "reasonable in amount."  *Goglin*, 4 Cal. App. 5th at 470 (quoting *Nightingale*, 31 Cal. App. 4th at 104); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Plaintiff requests an attorneys' fee award based on the following hourly rates for its attorneys who worked on this matter:

| Attorney | Requested Hourly Rate | Years of Practice |
|---|---|---|
| Attorney Alastair Hamblin | $325.00 | 8 years[6] |
| Attorney Amy Morse | $350.00 | 7 years |
| Attorney Deepak Devabose | $275.00 | 6 years |
| Attorney Diane Hernandez | $375.00 | 23 years |
| Attorney Joel Elkins | $450.00 | 9 years |
| Attorney Kristina Stephenson-Cheang | $350.00 | 12 years |
| Attorney Mitchell Rosensweig | $325.00 | 8 years |
| Attorney Michael Morris-Nussbaum | $225.00 | 3 years[7] |
| Attorney Natalee Fisher | $250.00 | 5 years |
| Attorney Steve Mikhov | $500.00 | 17 years |

(Doc. No. 99-2 at 7–10, 27.)

In support of these requested rates, plaintiff has submitted the declaration of attorney Steve Mikhov.  (Doc. No. 99-2.)  In his declaration, attorney Mikhov describes the experience level and educational background of each of the attorneys that worked on this matter, and he asserts that their hourly rates are reasonable and consistent not only with the rates that courts have approved for these specific attorneys—including this court—but also with the rates that courts

---

[6] Plaintiff did not provide any specific information regarding when Alastair Hamblin began practicing law, but rather reported only that he "graduated from Southwestern Law School in 2007" and began working at Knight Law Group in 2016.  (Doc. 99-2 at 8.)  However, the court "may take judicial notice of the State Bar of California's website regarding attorneys' dates of admission to the Bar."  *Davis v. Hollins Law*, 25 F. Supp. 3d 1292, 1298 n. 5 (2014).  Thus, the court takes judicial notice of the admission date of Alastair Hamblin as February 2012, as represented on the website of the State Bar of California.  *See id.*; Fed. R. Evid. 201(b).

[7] As with attorney Hamblin, plaintiff did not provide any specific information regarding when Michael Morris-Nussbaum began practicing law, but the court takes judicial notice of the admission date of Michael Morris-Nussbaum as November 2017, as represented on the website of the State Bar of California.

12

1    have approved for attorneys of comparable levels of experience in other consumer cases.  (*Id.* at

2    7–17.)  Attached to attorney Mikhov's declaration are several hourly rate determinations by state

3    courts in Song-Beverly Act actions with respect to some of the attorneys who worked on this

4    case.  (*Id.* at 12–16,  Exs. D–O.)  In support of its opposition to plaintiff's motion for attorneys'

5    fees, FCA filed a declaration from its counsel, attorney Leon V. Roubinian, which attached

6    several hourly rate determinations by state courts in Song-Beverly Act actions where some of the

7    attorneys who worked on this case have been awarded rates lower than those requested by them

8    here.  (*See* Doc. No. 107-2 at 3–4, Exs. H–O.)  The parties' attachments demonstrate that various

9    superior courts in California have awarded the following rates in Song-Beverly Act actions to the

10   following attorneys at issue here:  attorney Mikhov has been awarded hourly rates between

11   $300.00 and $500.00; attorney Morse has been awarded hourly rates between $225.00 and

12   $350.00; attorney Devabose has been awarded hourly rates between $175.00 and $250.00;

13   attorney Stephenson-Cheang has been awarded hourly rates between $250.00 and $350.00; and

14   attorney Hamblin has been awarded an hourly rate of $325.00.  Moreover, after reviewing rates

15   awarded by various superior courts in California, the undersigned recently issued orders awarding

16   the following hourly rates to the following attorneys who have appeared in this action:  $350.00

17   for attorney Morse; $250.00 for attorney Devabose; $350.00 for attorney Stephenson-Cheang;

18   $500.00 for attorney Mikhov; $325.00 for attorney Hamblin; and $325.00 for attorney

19   Rosensweig.  *See Sekula v. FCA US LLC*, No. 1:17-cv-00460-DAD-JLT, 2019 WL 5290903, at

20   *7 (E.D. Cal. Oct. 18, 2019); *Rueda v. FCA US LLC*, No. 1:17-cv-00968-DAD-JLT, 2020 WL

21   469333, at *7 (E.D. Cal. Jan. 29, 2020); *Figures v. FCA US LLC*, No. 1:17-cv-00618-DAD-JLT,

22   2020 WL 820164, at *8 (E.D. Cal. Feb. 19, 2020); *Aviles v. Subaru of Am., Inc*., No. 1:18-cv-

23   01544-DAD-SKO, 2020 WL 868842, at *6 (E.D. Cal. Feb. 21, 2020).

24        Because "the reasonable value of attorney services is variously defined as the hourly

25   amount to which attorneys of like skill in the area would typically be entitled," *Ketchum*, 24 Cal.

26   4th at 1133, the court finds that evidence of what some of the attorneys have previously been

27   awarded when litigating other Song-Beverly actions does assist this court in determining what the

28   reasonable hourly rates should be in this case.  *See also Goglin*, 4 Cal. App. 5th at 470; *Filiberto*

*Negrete*, 2019 WL 4221397, at *3.  While the undersigned has not previously awarded fees for attorney Elkins, his hourly rate of $450.00 appears to be unreasonably high, and at least one other court has determined that $450.00 was not a reasonable hourly rate for attorney Elkins.  *See Morris v. Hyundai Motor Am.*, No. BC612232, 2018 WL 10086638, at *2 (Cal. Super. Ct. Apr. 16, 2018) (finding requested rates for associates, including $450.00/hour for attorney Elkins, to be unreasonable and fixing all associate rates at $300.00 per hour).  Here, plaintiff has not justified the requested hourly rate of $450.00 for attorney Elkins.  Attorney Mikhov declares that attorney Elkins graduated from Southwestern Law School in 2007, and "has worked over 20 years in the legal field, including nine as a practicing attorney." (Doc. No. 99-2 at 9, ¶ 32.)  But, attorney Mikhov does not explain what other experience in the legal field attorney Elkins has, or why such experience justifies awarding him an hourly rate of $450.00—the second highest rate requested in this case.  The court is particularly reluctant to do so given that attorney Elkins's rate is higher than two attorneys who have substantially more years of legal practice experience than he does, and his requested rate is $150.00 more than the hourly rate for two attorneys who have just one year less of practice experience than he does.  Thus, the court finds that an hourly rate of $325.00—not $450.00—is reasonable for attorney Elkins.

Having considered the various state court orders submitted by both plaintiff and FCA as well as other evidence, the court concludes that the following hourly rates as to each of plaintiff's attorneys are reasonable:

| Attorney | Hourly Rate to be Awarded | Years of Practice |
|---|---|---|
| Attorney Alastair Hamblin | $325.00 | 8 years |
| Attorney Amy Morse | $350.00 | 7 years |
| Attorney Deepak Devabose | $275.00 | 6 years |
| Attorney Diane Hernandez | $375.00 | 23 years |
| Attorney Joel Elkins | $325.00 | 9 years |
| Attorney Kristina Stephenson-Cheang | $350.00 | 12 years |
| Attorney Mitchell Rosensweig | $325.00 | 8 years |
| Attorney Michael Morris-Nussbaum | $225.00 | 3 years |
| Attorney Natalee Fisher | $250.00 | 5 years |
| Attorney Steve Mikhov | $500.00 | 17 years |

/////

14

### 3.    Lodestar Calculation

Based on the hours and hourly rates that the court has determined are reasonable in this matter, the lodestar here totals $29,572.50.  The court's calculations are reflected below:

| Attorney | Hours Awarded | Hourly Rate Awarded | Lodestar |
|---|---|---|---|
| Attorney Alastair Hamblin | 10.2 | $325.00 | $3,315.00 |
| Attorney Amy Morse | 5.4 | $350.00 | $1,890.00 |
| Attorney Deepak Devabose | 20.0 | $275.00 | $5,500.00 |
| Attorney Diane Hernandez | 15.3 | $375.00 | $5,737.50 |
| Attorney Joel Elkins | 7.5 | $325.00 | $2,437.50 |
| Attorney Kristina Stephenson-Cheang | 9.8 | $350.00 | $3,430.00 |
| Attorney Mitchell Rosensweig | 4.4 | $325.00 | $1,430.00 |
| Attorney Michael Morris-Nussbaum | 3.7 | $225.00 | $832.50 |
| Attorney Natalee Fisher | 6.0 | $250.00 | $1,500.00 |
| Attorney Steve Mikhov | 7.0 | $500.00 | $3,500.00 |
| | | Total: | $29,572.50 |

### 4.    Lodestar Multiplier

Next, plaintiff urges this court to apply a multiplier of 0.5 to the lodestar in this case. (Doc. No. 99-1 at 20–22.)  Specifically, plaintiff argues that the contingent nature of this litigation warrants a 0.2 multiplier and that the delay in payment warrants a 0.3 multiplier.  (*Id.* at 22.) According to plaintiff, "there always existed the possibility Plaintiff would not prevail," and that "[t]he risk was compounded by the fact that Plaintiff's attorneys advanced all litigation costs and expenses without reimbursement."  (*Id.*)  FCA argues that an upward multiplier is not warranted here and suggests that a negative multiplier is warranted because Knight Law inflated their fees for performing basic litigation tasks, without displaying any special skill and without addressing any novel or difficult legal issues.  (Doc. No. 107 at 21–23.)

The lodestar may be "augmented . . . by taking various relevant factors into account, including (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the award."  *Robertson*, 144 Cal. App. 4th at 819; *see also Warren v. Kia Motors Am., Inc.*, 30 Cal. App. 5th 24, 35 (2018).

15

Here, plaintiff does not contend that his attorneys were precluded from seeking other employment.  Rather, plaintiff argues that "[t]his case required a range of specialized knowledge including:  (1) an understanding of the full scope of consumer protection laws, . . .; (2) knowledge of the intricacies of automobiles . . .; and (3) knowledge of auto manufactures' and dealers' policies and protocols for repairing vehicles and complying with their legal obligations." (Doc. No. 99-1 at 17.)  However, the fact that plaintiff's attorneys had to become familiar with a case is not the type of novelty or difficulty that ordinarily justifies an upward multiplier.  Moreover, as plaintiff admits, his "attorneys have acquired knowledge and insight about these issues over the course of many years of litigation," and the attorneys do not "spend unreasonable time preparing pleadings because they are able to use documents from other cases that need only be edited, rather than written from scratch."  (*Id.* at 17–18.)  Indeed, the issues presented by this case have recently been addressed in several cases before this court, many of which involved the same attorneys who appeared in this action.  *See, e.g.*, *Sekula*, 2019 WL 5290903; *Self*, 2019 WL 1994459; *Hall*, 2018 WL 2298431; *Garcia v. FCA US LLC*, 1:16-cv-00730-JLT (E.D. Cal. March 7, 2018).  Finally, with respect to counsel's performance, the court has reviewed the pleadings filed in this action and finds that the skills displayed by counsel were, on balance, average at best, given that it is readily apparent from the face of the pleadings filed by plaintiff's counsel that they relied upon pleadings from other actions as templates.  The court therefore finds that the first two factors that could justify the application of a multiplier are not present here because this was a Song-Beverly action of ordinary complexity and difficulty.

Moreover, the court concludes that the contingent nature of this action does not weigh in favor of an upward multiplier.[8]  "The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important . . . rights . . .

---

[8]  FCA argues that because plaintiff has not provided a copy of the fee agreement, plaintiff has not established that Knight Law represented him on a fully contingent basis.  (Doc. No. 107 at 17).  The court concludes that attorney Mikhov's statement in his declaration that Knight Law represented plaintiff on a "fully contingent basis" (Doc. No. 99-2 at 3) is sufficient and that plaintiff is not required to provide the court a copy of the fee agreement.  *See Bratton v. FCA US LLC*, No. 17-cv-01458-JCS, 2018 WL 5270581, at *7 (N.D. Cal. Oct. 22, 2018) (finding attorney Mikhov's declaration sufficient and not requiring plaintiffs to produce their retainer agreement).

1   into line with incentives they have to undertake claims for which they are paid on a fee-for-

2   services basis." *Ketchum*, 24 Cal. 4th at 1132.

3               A contingent fee must be higher than a fee for the same legal
                services paid as they are performed.   The contingent fee
4               compensates the lawyer not only for the legal services he renders
                but for the loan of those services.  The implicit interest rate on such
5               a loan is higher because the risk of default (the loss of the case,
                which cancels the debt of the client to the lawyer) is much higher
6               than that of conventional loans.

7   *Id.* (citation and internal quotation marks omitted).  The court concludes that an upward multiplier

8   based on the contingent risk is not warranted here because that factor is outweighed by the other

9   factors the court has considered, namely that this case was not novel, complex, or difficult,

10  especially because the disputed facts and issues to be resolved were minimal.

11          Similarly, the court finds that an upward multiplier due to any delay in payment of fees to

12  plaintiff's counsel is not warranted here.  Plaintiff contends that "FCA dragged this case out for

13  years before finally making a reasonable settlement offer."  (Doc. No. 99-1 at 22.)  Be that as it

14  may, the court is not convinced that (1) FCA is solely to blame for the delay in resolving this

15  action and (2), even if it was, it does not appear to the court that any delay was so egregious so as

16  to justify an upward multiplier.  The court is also not persuaded by FCA's arguments that a

17  negative multiplier is warranted.[9]

18  /////

19

---

20  [9]  FCA also invites the court to speculate as to plaintiff's tax liability and to analyze the tax
    consequences of a higher attorneys' fee award on plaintiff's net recovery.  (Doc. No. 107 at 19.)
21  FCA has not pointed the court to any applicable authority to suggest that conducting such an
    analysis is appropriate here.  FCA cites only to the California Court of Appeal's decision in
22  *Meister v. Regents of Univ. of Cal.*, 67 Cal. App. 4th 437, 453 (1998).  But there, the court was
    assessing whether a settlement offer that plaintiff had rejected had more favorable terms than the
23  judgment ultimately entered in plaintiff's favor.  In making that assessment, the trial court
    compared the value of the rejected offer, which was taxable, with the value of the judgment, for
24  which a portion was nontaxable.  *Id.*  The appellate court concluded that "[b]ecause a portion of
    the judgment was nontaxable, the trial court properly accounted for that distinction in comparing
25  the two amounts."  *Id.*  The court in *Meister* did not conduct an analysis of the tax consequences
    of plaintiff's "tax liability increas[ing] with every dollar of statutory attorneys' fees awarded" or
26  conclude that such "tax liability will reduce plaintiff's net recovery," or that a reduction in the
    amount of fees awarded is warranted as a result—all of which FCA asks this court to do here.
27
    (Doc. No. 107 at 19.)  The court declines the invitation to do so here.
28

Accordingly, the court declines to apply an upward or downward multiplier to the lodestar amount under the circumstances of this case, and will thus award $29,572.50 in attorneys' fees.

**B.     Motion for Costs and Expenses**

Pursuant to California Civil Code § 1794(d), plaintiff seeks an award of $12,317.91 as reimbursement for costs and expenses incurred by Knight Law in litigating this matter.  (Doc. Nos. 100; 100-1 at 2.)  Plaintiff did not *file* a bill of costs, but instead filed a motion for costs and expenses under Federal Rule of Civil Procedure 54(d), and attached as an exhibit to the declaration of Steve Mikhov in support thereof a bill of costs "for the purposes of assisting the court's review of plaintiff's costs and expenses."  (Doc. Nos. 100-1 at 10, n.1; 100-2 at 4, Ex. A.)

Rule 54(d) provides that "costs—other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d).  Moreover, 28 U.S.C § 1920 enumerates those costs that may be taxed by the judge or the Clerk of the Court.  For example, "[f]ees of the clerk and marshal" are taxable, but fees for expert witnesses that were not appointed by the court are not listed as a taxable cost.  *See* 28 U.S.C § 1920; *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437 (1987) (holding that "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920").  In contrast, any "claim for attorney's fees and *related nontaxable expenses* must be made by motion . . .."  Fed. R. Civ. P. 54(d)(2)(A) (emphasis added).

California law, however, permits plaintiffs who prevail in Song-Beverly Act cases to recover costs and expenses, including expert witness fees.  *See* Cal. Civ. Code § 1794(d); *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 138 (1995), *as modified on denial of reh'g* (June 22, 1995) (noting that with regards to § 1794, "the addition of awards of 'costs and expenses' by the court to the consumer to cover such out-of-pocket expenses as filing fees, expert witness fees, marshal[]'s fees, etc., should open the litigation process to everyone").  Applying § 1794(d), the court determines that expert witness fees and other costs that are nontaxable under federal procedural rules are recoverable here.  *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064–66 (9th Cir. 2003), *as amended on denial of reh'g* (Sept. 25, 2003) (applying Oregon statute

1    approving expert witness fees because the law was "an 'express indication' of a state legislature's

2    'special interest in providing litigants' with full compensation for reasonable sums" in pursuit of a

3    statutory claim.  However, § 1794(d) only answers the question of *whether* plaintiff may recoup

4    such costs and expenses—it does not answer the question of *how* plaintiff must seek

5    reimbursement.[10]

6         Because the recovery of "costs in federal district court is normally governed by Federal

7    Rule of Civil Procedure 54(d) even in diversity cases," *Champion Produce, Inc. v. Ruby Robinson*

8    *Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003), the appropriate vehicle for plaintiff to recoup

9    expert witness fees and other expenses is by motion brought pursuant to Rule 54(d)(2)(A), not by

10   taxation through a Bill of Costs.  The language of § 1794(d) is consistent with this approach:

11            If the buyer prevails in an action under this section, the buyer shall
             be allowed by the court to recover as part of the judgment a sum
12           equal to the aggregate amount of costs and expenses, including
             attorney's fees based on actual time expended, *determined by the*
13           *court to have been reasonably incurred* by the buyer in connection
             with the commencement and prosecution of such action.
14

15   Cal. Civ. Code § 1794(d) (emphasis added).  Whereas taxable costs are awarded as a matter of

16   course, and a court must justify its refusal to award such costs, *Champion Produce*, 342 F.3d at

17   1022 (holding that a "district court must 'specify reasons' for its refusal to award costs" because

18   "Federal Rule of Civil Procedure 54(d)(1) establishes that costs are to be awarded as a matter of

19   course in the ordinary course") (citation omitted), the party claiming nontaxable costs like expert

20   witness fees must demonstrate to the court, *by motion*, that its request is reasonable.  *See* Fed. R.

21   Civ. P. 54(d)(2)(A); Cal. Civ. Code § 1794(d).  This logic is precisely why plaintiff was required

22   to and is seeking attorneys' fees, costs, and expenses by motion and not via a Bill of Costs.

23   /////

---

24   [10]  The court recognizes that district courts in this circuit are divided as to whether expert witness
     fees and other costs and expenses are recoverable in federal court pursuant to § 1794(d), and if so,
25   whether such costs and expenses are taxable in a Bill of Costs or must be sought via motion.
     *Compare Base v. FCA US LLC*, No. 17-cv-01532-JCS, 2020 WL 363006, at *6–7 (N.D. Cal. Jan.
26   22, 2020) (listing and comparing cases), *and Zomorodian v. BMW of N. Am., LLC*, 332 F.R.D.
     303, 307 (C.D. Cal. 2019), *with Self v. FCA US LLC*, No. 1:17-cv-01107-SKO, 2019 WL
27   1994459, at *15 (E.D. Cal. May 6, 2019), *and Hall v. FCA US LLC*, No. 1:16-cv-0684-JLT, 2018
     WL 2298431, at *10 (E.D. Cal. May 21, 2018).

28

FCA opposes plaintiff's motion for costs and expenses and contends that several of plaintiff's costs were not reasonably incurred in connection with the commencement and prosecution of this action.

First, FCA asserts that the court should reduce plaintiff's requested amount of $119.90 to $65.00 for the fees for service of a deposition subpoena because $65.00 is the amount charged by the U.S. Marshal, and Local Rule 292(f)(2) limits the amount recoverable to the amount charged by the U.S. Marshal for the same service per 20 C.F.R. § 0.114(a). (Doc. No. 106 at 5.) Plaintiff does not dispute this limitation, but he asserts that the U.S. Marshal currently charges $65.00 per hour (or portion thereof) *for each item served*," and here, the $119.90 fee was charged for service of three items. (Doc. No. 109 at 6–7.) The court notes, however, that the regulation defines item as "all documents issued in one action which are served *simultaneously* on one person or organization." *See* 20 C.F.R. § 0.114(d) (emphasis added). The invoice provided by plaintiff to substantiate these service costs lists all three documents on the same invoice, with one order number and one process serving charge (rather than three distinct charges), and there is no indication that these documents were not served simultaneously. (Doc. No. 100-2 at 12.) Accordingly, the court will reduce the amount to be reimbursed for this fee to $65.00.

Second, FCA contends that several costs incurred in connection with depositions were for the convenience of counsel and should be disallowed. (Doc. No. 106 at 5–6.) In particular, FCA challenges plaintiff's inclusion of charges for: exhibit linking in deposition transcripts, condensed transcripts, an eDisk, a litigation support packet, an exhibit flashdrive, exhibit scanning with a CD, and parking. (*Id*. at 6.) FCA also contends that it should not have to reimburse for "interest fees" charged due to Knight Law's failure to timely pay invoices. (*Id.*) In response, plaintiff counters that FCA has failed to show the unreasonableness of these costs, which are allowable under the Song-Bervely Act. (Doc. No. 109 at 7.) However, plaintiff bears the burden to demonstrate that these costs were reasonably incurred in connection with the commencement and prosecution of this action. The court finds that plaintiff has not done so with respect to the $35.40 charge for interest fees due to untimely payment of invoices. As to the other charges, the court does not agree with FCA's argument that because costs are incurred for the

convenience of counsel, they are somehow rendered unreasonable or not incurred in connection with the commencement and prosecution of this action.  Accordingly, the court will reduce the amount to be reimbursed for these deposition related costs only by the amount of $35.40.

Third, FCA challenges plaintiff's request for reimbursement of attorneys' travel costs and contends that under Local Rule 292(f)(8), only mileage fees for witnesses can be taxed as costs. (Doc. No. 106 at 6–7.)  But, as plaintiff points out in response (Doc. No. 109 at 7), plaintiff is not limited to recovery of taxable costs in this Song Beverly Act case.  Accordingly, the court will not reduce any of the requested amount for plaintiff's attorneys' travel.

Fourth, FCA contends that $4,098.75 in expert witness fees for plaintiff's expert Dr. Luna were not reasonably incurred and should be disallowed.  (Doc. No. 106 at 8.)  FCA reiterates the same argument that it presented in opposing plaintiff's request for attorneys' fees related to time spent on the deposition of Dr. Luna—that Dr. Luna was hired to support plaintiff's fraudulent concealment claim (which plaintiff abandoned), not the warranty claims (which plaintiff settled). (*Id.*)  Here too, and for the reasons explained above, the court rejects FCA's argument and declines to reduce any of the requested amount for expert witness fees.

Fifth, FCA contends that the mediation fees of $1,175.00 must be disallowed because that charge is not within the scope of 28 U.S.C. § 1920 or Local Rule 292(f).  (Doc. No. 106 at 9.) Plaintiff counters that these mediation costs were actually incurred in this action, and that FCA's reliance on federal procedural law to disallow these costs is misplaced.  (Doc. No. 109 at 9.)  The court agrees and concludes that plaintiff reasonably incurred these mediation fees in connection with the prosecution of this action.

Sixth, and finally, FCA contends that fees for messenger and courier services should be disallowed because those charges fall outside the scope of recoverable costs under § 1920.  (Doc. No. 106 at 9.)  Plaintiff again counters that FCA's reliance on federal procedural law to disallow these costs is misplaced.  (Doc. No. 109 at 9–10.)  The court agrees and concludes that plaintiff reasonably incurred these costs in connection with the prosecution of this action and are thus recoverable under the Song-Beverly Act.

/////

The court will also award $150.00 in jury fees incurred by plaintiff before removal to this court as reasonably incurred.  Accordingly, after applying the reductions noted above, the court will award costs and expenses as follows:

| Cost and Expense | Amount Requested | Amount Awarded |
|---|---|---|
| Fees of the Clerk | $435.00 | $435.00 |
| Fees for Service of Summons and Subpoena | $157.85 | $102.95 |
| Jury Fees | $150.00 | $150.00 |
| Deposition Costs | $2,360.13 | $2,324.73 |
| Expert Witness Fees | $7,824.68 | $7,824.68 |
| Messenger Services | $75.36 | $75.36 |
| Mediation Fees | $1,175.00 | $1,175.00 |
| Courier | $21.57 | $21.57 |
| Travel | $118.32 | $118.32 |
| Total: | $12,317.91 | **$12,227.61** |

The court concludes that plaintiff is entitled to a total of $12,227.61 in reimbursements for costs and expenses, in addition to an award of reasonably incurred attorneys' fees.

### CONCLUSION[11]

For the reasons explained above:

1. Plaintiff's motion for attorneys' fees and costs (Doc. No. 99) is granted in part;

2. The court awards $29,572.50 in attorneys' fees based on the lodestar analysis set forth above;

3. The court awards costs and expenses in the amount of $12,227.61; and

/////

/////

/////

/////

/////

---

[11] Counsel for both parties are well aware that this court has been operating with only four active District Judges since February of this year.  Matters such as those addressed by this order should be easily resolved by the parties without judicial intervention.  In the future, if they are not, until this court's vacancies are filled it may simply be impossible for the undersigned to expend the time necessary to resolve such motions in light of the demand of having approximately 600 defendants in criminal cases pending before him at any one time.

22

4.     Pursuant to the parties' stipulation (Doc. No. 97), the court awards plaintiff's trial counsel Hackler, Daghigian, Martino, & Novak, P.C. ("HDMN") $5,000 in attorneys' fees.

IT IS SO ORDERED.

Dated:   **August 24, 2020**

_____
UNITED STATES DISTRICT JUDGE

23